LINDSEY TAVERN, INC. *et al. vs.* HOTEL & RESTAURANT EMPLOYEES, LOCAL 307, A. F. OF L.

LINDSEY TAVERN, INC. *et al. vs.* HOTEL & RESTAURANT EMPLOYEES & BARTENDERS UNION 285, A. F. OF L.

AUGUST 31, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

PAOLINO, J. These are appeals by the respondents from decrees of the superior court granting the complainants' prayer for a preliminary injunction barring the respondents

and their agents and servants from picketing the premises of the complainants until further order of that court.

The complainants are two Rhode Island corporations operating a restaurant in the town of Lincoln under the name of Lindsey Tavern. While there are two cases before this court, one against Hotel & Restaurant Employees, Local 307 A. F. of L., and the other against Hotel & Restaurant Employees & Bartenders Union 285, A. F. of L., we shall consider them together as if they were filed and decided at the same time, since the controlling issues are the same in both cases and they have been so treated by the parties.

Upon the filing of the first bill of complaint praying for a restraining order and temporary and permanent injunctions against the respondents, and before the issuance of process, respondents' attorney was notified thereof, in accordance with the provisions of general laws 1938, chapter 299, as amended by public laws 1951, chap. 2748, and he conferred with the presiding justice of the superior court and counsel for complainants. The superior court without a hearing then denied the respondents' motion to dismiss the prayer for a restraining order. Thereafter the taking of testimony was commenced for the purpose of deciding whether or not a restraining order should issue. By agreement of all the parties the trial proceeded as a hearing on the temporary injunction, and at the conclusion thereof a decree was entered by the superior court temporarily enjoining picketing by the respondents, their agents and servants.

From the testimony it appears that complainants employ about thirty employees, excluding supervisors, office and clerical workers, head waiter and chef. In August 1955 the respondent unions initiated a campaign to organize the employees of complainants and to induce them to join their respective unions. A bartender employed by complainants was the organizer and he signed up a number of employees as union members. Thereafter he was discharged as an employee by complainants. Several conferences in that

connection were held by complainants and respondents in an attempt to arrive at some mutual understanding.

In the meantime, on September 28, 1955, respondents filed with the state labor relations board a petition for certification as bargaining agent, alleging that there were eighteen employees in the bargaining unit, excluding supervisors, office and clerical workers, head waiter and chef. On October 14, 1955 unfair labor charges were filed by various individual employees of complainants, including one by the bartender, who had been discharged. On the day following such filing, thirteen employees of complainants, who were members of the respondent unions, went out on strike and a picket line was established on the sidewalk near the driveway at either end of a long stone wall in front of complainants' place of business. These employees were joined by pickets who were not employees but were members of the respondent unions. In the meantime a dispute arose as to the eligibility of certain "spare banquet girls" to take part in the election of a bargaining agent.

Thereafter respondents filed a motion with the state labor relations board to withdraw their petition for certification on the grounds that the discharge of the bartender, the alleged granting of wage increases to certain employees, and the alleged disparaging statements made by complainants to certain of the employees would, if an election were ordered, hamper their free choice of a bargaining agent. The board granted this motion with prejudice. On the same day it entered a decision on the unfair labor practice charges wherein it found that these complainants were guilty of an unfair labor practice in discharging the bartender for union activity, and the latter was ordered reinstated with restoration of pay.

The officers of the respondent unions testified that the picketing would continue until there was a contract. The striking employees testified in substance that they were members of the respondent unions and had been employed

by complainants; that they were striking and picketing for security, better hours, wages and conditions of employment; and that they wanted the union to negotiate for them. They testified that they were unwilling to return to work without an agreement for their security and without a further agreement on the part of the complainants to negotiate with the union as to wages, hours and conditions of employment of those employees who were members thereof. Some of them testified also that they did not want an election in which "spare banquet girls" were permitted to vote, because they did not feel that such help belonged in the bargaining unit and they did not want a contract covering those employees.

The complainants' contention is that the object of respondents was to force complainants to execute a contract for a union shop with a union which did not represent a majority of the employees, and where the unions, by their action, had prevented an election to determine the wishes of the majority of the employees as to representation. The complainants further contend that this was an unlawful object because the union did not represent a majority of the employees.

The respondents have filed forty-one reasons of appeal. Their main contention, however, is that this controversy is a "labor dispute" within the meaning of G. L. 1938, chap. 299, §2, as amended by P. L. 1951, chap. 2748, and that inasmuch as this case involves a labor dispute the jurisdiction of the superior court in respect to issuance of an injunction is limited by the provisions of G. L. 1938, chap. 299, §1, as amended. In other words, the respondents contend that the superior court acted without jurisdiction or in excess thereof in granting the temporary injunction because it did not comply with the requirements of §1, as amended. We shall determine this question first, since it is evident that if this is a labor dispute as that term is defined in §2, as amended, the authority of the superior court would be controlled by the provisions of §1 of said act, and

unless the superior court has complied with such provisions its decree herein would be erroneous.

After a careful reading of the transcript we are of the opinion that the instant case involves a "labor dispute" as such term is defined in §2 of the act in question. This section reads as follows: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." It is clear from the evidence that this was a "controversy concerning terms or conditions of employment" and also a controversy "concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment * * *." It is our opinion that the portion of the decree adopting a statement in the rescript that "there is no labor dispute between the parties in the sense that there is at present a bargaining unit representing the employees with which the management can deal, which unit has offered a proposition to management concerning which proposition there is an inability to reach an agreement," is not decisive of the issues raised in this case. The controversy still is by nature and according to the terms of the statute a labor dispute.

Our state labor relations act does not require the existence of such a bargaining unit in order to constitute a labor dispute within the meaning of §2. The statute in question specifically states in §2 that it makes no difference "whether or not the disputants stand in the proximate relation of employer and employee." It is well established in this state, both before and since the adoption of our "anti-injunction law" in 1951, that picketing, if it is peaceful and unaccompanied by coercion, duress or intimidation, is lawful, and that this is so even if the picketing union represents no em-

ployees of the complainant. *Bomes* v. *Providence Local No. 223, Etc.*, 51 R. I. 499; *Grist* v. *Textile Workers Union of America, C. I. O.*, 78 R. I. 338.

Section 1 of the state labor relations act, P. L. 1941, chap. 1066, as amended, provides in clear and unambiguous language the purposes thereof and the policy of the state in enacting the statute. It reads as follows: "In the interpretation and application of this act, and otherwise, it is hereby declared to be the public policy of the state to encourage the practice and procedure of collective bargaining, and to protect employees in the exercise of full freedom of association, self-organization and designation of representatives of their own choosing for the purposes of collective bargaining, or other mutual aid and protection, free from the interference, restraint or coercion of their employers." That section also provides: "All the provisions of this act shall be liberally construed for the accomplishment of this purpose." Section 14 of the act states: "Nothing in this act shall be construed so as to interfere with, impede or diminish in any way the right of employees to strike or engage in other lawful, concerted activities." A reading of these sections makes abundantly clear the intent of the legislature, in the exercise of its police power, to fully protect the rights of employees to strike and to picket by lawful means and for lawful objects.

Since we have determined that the controversy in the case at bar was a "labor dispute" within the meaning of the state labor relations act, the question of whether or not the injunction was properly granted is governed by the provisions of G. L. 1938, chap. 299, as amended by P. L. 1951, chap. 2748. Before the amendment of 1951, the superior court had broad discretion under chap. 299 to issue injunctions in labor disputes. Thereafter the jurisdiction of our courts to issue such injunctions was limited by the express provisions of §1 as amended, which provides: "No court of this state shall have jurisdiction to issue a temporary or per-

manent injunction in any case involving a labor dispute, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect * * *." The amendment then sets forth specific findings of fact which must be made by the court as a condition precedent to the court's jurisdiction to issue any such injunction.

In our opinion this amendment requires a compliance by the court with the limitations imposed by G. L. 1938, chap. 299, §1, as amended. In the instant case the superior court did not make the findings of fact required by such amendment and as a result it did not acquire jurisdiction to grant the temporary injunction. The rescript of the trial justice contains no finding of fact, as now required by P. L. 1951, chap. 2748, sec. 1 (d), "That complainant has no adequate remedy at law"; nor does it comply with the limitation imposed by sec. 1 (e), "That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." Moreover the trial justice stated in his rescript: "The picketing appears to have been peaceful for the most part." Further he made no finding that any breach of the peace had occurred. The rescript of the trial justice states: "The picketing that is being done is for *organizational purposes*." (italics ours) It is well established in this state that such picketing if properly conducted is legal. *Bomes* v. *Providence Local No. 223, Etc., supra; Grist* v. *Textile Workers Union of America, C.I.O., supra.*

The rescript contains no finding of fact "That unlawful acts have been threatened and will be committed unless restrained," unless the court intended by its finding, that "The purpose of the picket line is at present to bring economic pressure upon the employers to compel them to force their employees to take a *certain course*," to mean that the

purpose of the picketing was to compel a closed shop or a union shop. (italics ours) However, after a careful reading of the transcript it is our opinion that there is no substantial evidence to support such a finding.

We are of the opinion that on the evidence presented the superior court, having failed to comply with *all* the requirements of G. L. 1938, chap. 299, §1, as amended by P. L. 1951, chap. 2748, was without jurisdiction to grant the temporary injunction, and therefore it will be unnecessary to consider the other reasons of appeal.

The appeal of the respondents in each cause is sustained, the decrees appealed from are reversed, and each cause is remanded to the superior court for further proceedings.

*Thomas D. Pucci, Cross, Graham, Reid & Ewing, Owen P. Reid,* for complainants.

*Sidney L. Rabinowitz,* for respondents.