290 A.2d 52.

ALMAC'S, INC. *vs.* R. I. GRAPE BOYCOTT COMMITTEE *et al.*

APRIL 20, 1972.

PRESENT: Roberts, C. J., Paolino, Joslin, Powers and Kelleher, JJ.

ROBERTS, C. J.  This civil action was brought seeking to enjoin the defendants from picketing a number of retail food stores operated by the plaintiff within the state of Rhode Island.  After hearing thereon a justice of the Superior Court granted the injunctive relief, and the defendants are now in this court prosecuting an appeal from that judgment.

It appears from the record that plaintiff operates several supermarkets, so called, within the state and has a valid and existing labor contract with a local of the Amalgamated Meat Cutters International Union, an affiliate of the AFL-CIO.  The defendants, members of the Rhode Island Grape Boycott Committee, are organized for the purpose of supporting and raising funds for the benefit of United Farm Workers Organizing Committee, a group that was engaged in organizing agricultural workers who are employed by certain grape growers in the state of California.  It is not disputed that during the summer and early fall of 1969 defendants were seeking to organize support in this state for the United Farm Workers Organizing Committee in its attempt to obtain collective bargaining rights as the representative of the California agricultural workers from the grape growers in that state.

Pursuant to this design, defendants undertook to organize groups to picket supermarkets where California grapes were sold. It is conceded that plaintiff's outlets, as well as others, usually offered California-grown grapes for sale and were picketed without objection until September 26, 1969. At that time the picketing of plaintiff's supermarket located on Taunton Avenue in the city of East Providence is alleged to have become disorderly and, therefore, required on two occasions the intervention of one or more members of the police department of that city. There is considerable conflict as to the nature and scope of the activities of the pickets which were alleged to have been disorderly. The trial justice in his rescript sets forth his conclusions of fact based upon the credible evidence, stating quite clearly that he considered the evidence to support a finding that the picketing was disorderly and interfering with potential patrons entering the premises of the Taunton Avenue store.

After the hearing had concluded, the parties, at the direction of the court, filed written memoranda of the applicable law as it related to the contentions they advanced. The trial justice thereafter rendered a decision in which he held, contrary to the principal contention raised by defendants, that the controversy between plaintiff and defendants was not a labor dispute within the contemplation of the definition thereof as set out in G. L. 1956 (1968 Reenactment) §28-10-3. Then on November 14, 1969, he entered a judgment granting injunctive relief.[1]

---

[1]In substance, the judgment enjoined defendants "* * * from assembling and placing more than 20 pickets at or in the immediate vicinity of any single store of the plaintiff on any one occasion"; "* * * from entering or attempting to enter any store of the plaintiff as a part of their picketing activities"; "* * * from physically obstructing or interfering with the right of access of customers, employees, and visitors to said stores * * *"; and affirmed the right of defendants "* * * to picket the plaintiff's stores, or any of them, in a peaceful and orderly manner consistent with the foregoing limitations and to disseminate literature to customers * * *."

In this court defendants have urged several grounds of error in the action of the trial justice in granting injunctive relief. The primary and, in our opinion, dispositive contention is that the Superior Court was without jurisdiction to grant such injunctive relief by virtue of the provisions of §§28-10-2, 28-10-3, and 28-10-4. Section 28-10-2 provides, in pertinent part: "No court of this state shall have jurisdiction to issue a temporary or permanent injunction in any case involving a labor dispute, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect — — * * *."

The statute then goes on to specify the findings of fact that must be made by the court in order to acquire jurisdiction to issue an injunction in a labor dispute as contemplated in §28-10-2. These findings, all of which must be made to confer jurisdiction,[2] are: (1) that unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained; (2) that substantial and irreparable injury to the complainant's property will result; (3) that as to each item of relief granted, greater injury will be inflicted upon the complainant by the denial of relief than will be inflicted upon the defendants by the granting of relief; (4) that the complainant has no adequate remedy at law; and (5) that the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection.

In short, the basic contention of defendants is that the court granted injunctive relief in a "labor dispute" without complying with the provisions of §28-10-2 which require

2Lindsey Tavern, Inc. v. Hotel & Restaurant Employees Local 307, A. F. of L., 85 R. I. 61, 69, 125 A.2d 207, 211 (1956).

the findings of fact prescribed therein and, therefore, was without jurisdiction to grant such relief. As we have noted, the trial justice found that the controversy between plaintiff and defendants did not constitute a labor dispute as contemplated in §28-10-2.

The questions to which we must direct our attention, then, are, first, whether the controversy here under scrutiny was a labor dispute within the contemplation of §28-10-2 and, if that be so, second, did the court acquire jurisdiction to grant injunctive relief by reason of its clear compliance with the fact-finding requirements set out in §28-10-2.

We turn, then, to the first question as to whether the controversy was a labor dispute. A labor dispute is defined in §28-10-3. The first paragraph of that statute provides: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The second paragraph of §28-10-3 provides, in substance, for the exclusion from the definition of a labor dispute of a controversy arising out of a demand that "* * * an employer recognize or bargain with a labor organization while another labor organization is the representative of employees in such unit as certified by the state labor relations commission, or the national labor relations board * * *." This provision, in our opinion, was inserted into the legislation in order to enable the court to exercise its injunctive powers in cases involving demands by a competing union made upon an employer whose employees at that time were represented by a certified bargaining agent. It is not pertinent, in our opinion, to the issues raised in this case.

The trial justice found that the instant controversy did not constitute a labor dispute as the same is defined in §28-10-3. In so doing, it is our opinion that he erred primarily because he overlooked the character of the controversy under consideration. Clearly, on the facts defendants were conducting a secondary boycott. The definition of a labor dispute in our act is identical with the definition of a labor dispute set out in the Norris-LaGuardia Act, 29 U. S. C. A. §113(c).

That section provides that the controversy must involve terms or conditions of employment. The language specifically excludes the necessity that "* * * the disputants stand in the proximate relation of employer and employee." The defendants in this case represent employees who seek recognition as a labor organization. They contend that they are attempting to exert economic pressure on the employer by informing the public that a particular product is produced by an employer who is resisting the efforts of his employees to organize an effective collective bargaining unit. This is a classic example of a secondary boycott. F. Frankfurter & N. Greene, *The Labor Injunction* 43 (1930). This controversy does involve terms and conditions of employment and is, therefore, in our opinion, a labor dispute as defined by our statute, §28-10-3. To hold otherwise is to ignore not only the language of the statute but also the important social and economic policy which the act embodies.

It is clear that a secondary boycott is within the range of activity which is protected from injunction under the Norris-LaGuardia Act. *Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees of America* v. *Dixie Motor Coach Corp.*, 170 F.2d 902, 906-07 (8th Cir. 1948). A secondary boycott is employed to exert pressure on a third party, not directly involved in a dispute, with the design that this pressure will influence the outcome of the primary dispute between an employer and his employees.

In *Bakery Sales Drivers Local Union No. 33* v. *Wagshal*, 333 U. S. 437, 444, 68 S.Ct. 630, 633, 92 L.Ed. 792, 798 (1948), Justice Frankfurter points out that the "[s]ale by a merchant of non-union commodities is, no doubt, a traditional source of labor disputes within the scope of the Norris-LaGuardia Act."

In this court plaintiff also contends that it was not error to grant injunctive relief to plaintiff in the circumstances. This on the theory that the Legislature, in enacting §28-10-2, did not intend to restrict the court's resort to its injunctive powers in cases involving labor disputes to the extent that the Congress intended to restrict such resort to the injunctive process in the federal courts. This argument rests upon the slight difference between the language of §28-10-2 of our anti-injunction statute and that contained in the federal act.

In the federal act the federal courts are prohibited from exercising the injunctive power "in any case *involving or growing out of* a labor dispute." (emphasis ours) The plaintiff directs our attention to the fact that in §28-10-3 our Legislature restricted the exercise of the injunctive power of the court "in any case *involving* a labor dispute." (emphasis ours) In other words, plaintiff attaches great significance to the fact that our Legislature, in providing for the limitation on the court's power to exercise the injunctive function, omitted the phrase "growing out of" and apparently limited the restriction to cases "involving" a labor dispute. We cannot agree.

We are persuaded from a history of the origin of this particular legislation that the omission by our Legislature of the words "growing out of" a labor dispute is not significant of an intent to give our courts a broader discretion to

exercise the injunctive power in a labor dispute.[3] The Norris-LaGuardia Act has been hailed as perhaps "* * * the most revolutionary piece of labor legislation ever adopted by Congress, even including the later New Deal statutes." C. Gregory, *Labor and the Law* 191 (1946). The Act embodies a broad concept of union interest "* * * transcending the restrictive features of the immediate employment relationship." *Id.* The design of the Act is to provide labor with the same coercive economic tools which are held by business and to shield the use of this economic pressure from the injunctive power of the courts. The Rhode Island Legislature surely intended that its enactment embody the same protection, since this shield from injunction is the essence of the federal legislation.

The statute before us should be interpreted with a view to the problems with which it is intended to deal. The paramount function in construing a statute is to ascertain the intent behind its enactment and to effectuate that intendment whenever it is lawful and within the competence of the Legislature. *Town of Scituate* v. *O'Rourke*, 103 R. I. 499, 239 A.2d 176 (1968). It is obvious that the General Assembly by its approval of §28-10-2 has sought to minimize judicial interference in labor controversies. The spirit of such legislation requires us to construe "involving" as being synonymous with or having the same connotations as "relating to" or "growing out of." See *Taub* v. *Bowles*, 149 F.2d 817 (U. S. Emer. Ct. App. 1945).

Having concluded that the controversy under considera-

---

[3]The General Assembly first limited the Superior Court's power to grant injunctive relief in a case "involving a labor dispute" in 1936 when it enacted one of the statutory predecessors to §28-10-2, to wit, P. L. 1936, chap. 2359. The Legislative Journals for the January, 1936, session show that the bill (later chap. 2359) was introduced and passed both branches of the General Assembly on April 30, 1936—the last day of the 1936 session. At no time was the bill referred to any legislative committee in either branch for study and consideration.

44

tion here was a labor dispute, it becomes pertinent to inquire whether the court acquired jurisdiction to grant injunctive relief in a labor dispute by reason of compliance with the fact-finding requirements set out in §28-10-2. The trial justice concededly made substantial findings of fact concerning the conduct of the secondary boycott at plaintiff's Taunton Avenue store. It is important, then, that we decide whether the trial justice made these findings of fact with the intent of acquiring jurisdiction to issue injunctive relief in a labor dispute.

Logic compels us to conclude that where the Legislature prescribes certain conditions as being prerequisite to the acquisition of jurisdiction by a court, it must intend that the acquisition of such jurisdiction depends upon at least substantial compliance with the conditions set out in the statute. This would be particularly so, in our opinion, where the legislation had the effect of limiting jurisdiction possessed by a court. We are constrained to conclude that in the latter circumstances the Legislature would have intended that there be strict compliance with the conditions precedent to the acquisition by the court of the jurisdiction that had been so limited.[4] We cannot assume that the Legislature intended that limitations imposed upon an exercise by a court of its injunctive power in labor disputes could be

---

[4]This court has suggested on at least two previous occasions that strict compliance with the requirements of §28-10-2 is essential before jurisdiction vests in the Superior Court to issue a valid injunction in cases involving a labor dispute. *Lindsey Tavern, Inc.* v. *Hotel & Restaurant Employees Local 307, A. F. L., supra; Mutuel Clerks' Guild of Rhode Island* v. *Pari Mutual Employees Union of Building Service International Union, AFL-CIO,* 84 R. I. 258, 261-62, 123 A.2d 255, 256-57 (1956). It is generally recognized that where a court's jurisdiction is specifically limited by statute, " '* * * the requirements of the Act must be strictly complied with.' " *Scherr* v. *Braun,* 211 Md. 553, 564, 128 A.2d 388, 393 (1957); see *State* v. *District Court of First Judicial District,* 131 Mont. 502, 507, 312 P.2d 119, 122 (1957); *In re Prudenzano's Will,* 116 Vt. 55, 60, 68 A.2d 704, 708 (1949).

obviated by general findings of fact that did not clearly disclose that the findings were made in express terms to comply with the prerequisites set out in the statute. We are constrained to conclude that in the instant case, while the findings of fact made by the trial justice were comprehensive, they did not constitute a strict compliance or, for that matter, even a substantial compliance with the conditions set out in §28-10-2.

Our conclusion that jurisdiction was not acquired by reason of the court's fact findings is buttressed by the fact that the court held that the controversy did not constitute a labor dispute within the contemplation of §28-10-2 and must, therefore, be assumed to have held that it could issue injunctive relief in an exercise of its general equity powers. We must conclude, then, that the court assumed that it was not bound by the provisions of §28-10-2 to make the findings of fact prescribed therein as prerequisite to its acquisition of jurisdiction to grant injunctive relief in a matter involving a labor dispute. In other words, it is our opinion that when the trial court here granted the injunctive relief, it acted on the ground that it was exercising its general equity power to grant injunctive relief upon a showing of a probability that the conduct of the respondent could result in irreparable injury to the complainant and that the complainant would, therefore, be without an adequate remedy at law.

It would be mere conjecture on our part to hold that in such circumstances the trial court, in making its findings of fact, did so for the purpose of acquiring jurisdiction under the anti-injunction statute. Clearly, the court did not intend to issue its injunction in a labor dispute as defined in §28-10-3 but was making such findings to warrant an exercise of the general equity powers vested in the court.

We hold, then, that the controversy was a labor dispute as defined in §28-10-3, and that the court was without jur-

46

isdiction to grant injunctive relief to the plaintiff in that it had not complied with the fact-finding requirements set out in §28-10-2. The judgment, then, granting injunctive relief we hold to have been unlawfully issued and to be null and void. Because we so conclude that the injunction was unlawful, we do not reach the question of whether its issuance infringed any constitutional rights of the defendants.

The appeal of the defendants is sustained, the judgment appealed from is reversed, and the injunction issued on November 14, 1969, is dissolved.

Mr. Justice Powers, dissenting. In my opinion the Superior Court justice was correct in holding that the case at bar does not present a controversy involving a "labor dispute" as that term is defined by G. L. 1956 (1968 Reenactment) §28-10-3. This section provides in pertinent part:

> "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

Referring thereto, the majority point to the phrase "regardless of whether or not the disputants stand in the proximate relation of employer and employee." They then, at least implicitly, relate the quoted language to the status of plaintiff and defendants. In my opinion, however, the picketing of the premises of one employer as a means of protest against working conditions attributable to another employer is not a situation which can be defined as a "labor dispute" per se. From a reading of cases decided under the Norris-LaGuardia Act, which, as the majority point out, is in this regard identical with the first paragraph of §28-10-3, I am persuaded that while the picketing disputants need not be employees, the employer disputant must be an em-

ployer who has it in his power to correct the working conditions that are the subject of the picketing.

*New Negro Alliance* v. *Sanitary Grocery Co.*, 303 U. S. 552, 58 S.Ct. 703, 82 L.Ed. 1012 (1938), stands as a classic example. There the employer being picketed, Sanitary Grocery Co., was accused by the picketers, members of the New Negro Alliance, of discriminating against blacks when hiring clerks for their stores. The New Negro Alliance was a corporation composed of colored persons, organized for the mutual improvement of its members and the promotion of civic, educational, benevolent and charitable enterprises. It was not a labor union seeking gains for its members as such. Nevertheless, the rationale of the court's holding was that persons or associations having a valid concern regarding employment practices of an employer, even though not employees, should be free to make known their concern regarding the employer's working conditions through peaceful picketing and boycotting activities.

Here, plaintiff Almac's, the employer being picketed by defendants, is not the employer whose working conditions are sought to be changed. Rather, it is working conditions insisted upon by California grape growers that defendants seek to change.

But, says the majority, defendants' picketing of plaintiff's premises constitutes a secondary boycott which in turn is within the range of activity which is protected from injunction under the Norris-LaGuardia Act, citing *Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees of America* v. *Dixie Motor Coach Corp.*, 170 F.2d 902, 906-07 (8th Cir. 1948). I agree, of course, that defendants were engaged in a secondary boycott and I also agree that secondary boycotts fall within the restrictive intendment of the Norris-LaGuardia Act.

But the restricting provision of the Norris-LaGuardia Act, 29 U. S. C. A. §107, is as follows:

> "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving *or growing out of* a labor dispute, as defined in this chapter * * *." (emphasis mine)

The comparable provision of the Rhode Island anti-injunction statute, §28-10-2, provides:

> "No court of this state shall have jurisdiction to issue a temporary or permanent injunction in any case *involving* a labor dispute * * *." (emphasis mine)

Taking note of the fact that the phrase "or growing out of" was not included by the General Assembly in setting about placing restrictions on the power of the Superior Court to grant injunctive relief in cases arising out of labor disputes, the majority concludes that the omission is without significant materiality. This is a conclusion with which I am unable to agree.[1]

Clearly, defendants at bar are engaged in a labor dispute with California grape growers. Just as clearly that is a labor dispute in which the plaintiff at bar is not involved. But the defendants' picketing of the plaintiff's premises grows out of their labor dispute with California grape growers and as such qualifies as a controversy falling within the ambit of the Norris-LaGuardia Act. Such picketing does not, however, in my opinion, constitute a controversy regarding which the equity jurisdiction of the Superior Court to enjoin is restricted by §28-10-2.

I would dismiss the appeal and affirm the appealed judgment.

*Joseph G. Kinder, Eugene V. Higgins,* for plaintiff.

*Abedon, Michaelson, Stanzler & Biener, Julius C. Michaelson, Richard A. Skolnik,* for defendants.

---

[1] An excellent illustration of the substantive distinction between "involving" and "growing out of" when both are used in a statutory provision is to be found in *Miner* v. *Bettendorf,* 2 App. Div.2d 951, 157 N.Y.S.2d 27 (1956).