366 A.2d 1151.

CITY OF EAST PROVIDENCE *vs.* LOCAL 850, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL-CIO *et al.*

CITY OF EAST PROVIDENCE *vs.* EAST PROVIDENCE LODGE NO. 1, FRATERNAL ORDER OF POLICE *et al.*

DECEMBER 14, 1976.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

330

Doris, J. Two cases were consolidated for hearing in this certiorari proceeding. The petitioner in both cases is the City of East Providence (the city). The respondents in case No. 76-182—M.P. are the bargaining agents for the city's firefighters, Local 850, International Association of Firefighters, AFL-CIO, and the individual members of an arbitration board convened under the Fire Fighters' Arbitration Act, G. L. 1956 (1968 Reenactment), ch. 9.1 of title 28. The respondents in case No. 76-181—M.P. are the East Providence Lodge No. 1, Fraternal Order of Police, and the individual members of an arbitration board convened under the Policemen's Arbitration Act, ch. 9.2 of title 28. The dispute in both cases centers on the legality of an

amendment to both the policemen's and the firefighters' pension funds ordered by the respective arbitration boards.

Since the issues involved in each of the two cases are identical, both of the unions will be referred to collectively as "the unions" and the arbitration boards will be referred to collectively as "the board". Since the relevant provisions of the Policemen's Arbitration Act and the Fire Fighter's Arbitration Act are the same, both statutes will be referred to collectively as "the Arbitration Act".

The city and the two unions reached an impasse in their negotiations for a collective bargaining agreement for the fiscal year November 1, 1975 through October 31, 1976. Two arbitration boards were convened pursuant to the statutes mentioned above, and it was agreed that joint hearings would be held to deal with the common unresolved issue of the pension plan. The unions had previously agreed that if the city accepted their proposals with regard to the pension fund — which were identical — they would withdraw all other economic proposals involving additional spending by the city. The city, in turn, had agreed to submit all unresolved issues, including the pension plan, to arbitration in the event of impasse, as provided in the statutes. At the time of the joint hearings however, the city reserved its right to contest the board's jurisdiction to amend the pension plan.

The unions' proposal with regard to the pension plan was aimed at eliminating the age requirement for retirement (presently set at age 55 with 20 years of service, at age 60 with 10 years service) and basing eligibility for retirement instead solely on the basis of 20 years service. The board incorporated the unions' proposal for retirement at any age after 20 years of service in its award but directed that the plan be implemented over a five-year period in order to lessen the financial impact on the city. To avoid a subsequent rehearing in the event that it was

later determined that the board had no jurisdiction to consider the pension issue, the board also made an alternate award in the form of a wage increase. Faced with the adverse decision by the board, the city filed a petition for certiorari in this court.

In its petition, the city questions the validity of the arbitration award insofar as it purports to amend the pension plans. The grounds advanced by the city in support of its challenge are summarized quite well in the unions' memorandum to this court.

I) The board lacked jurisdiction to change the pension plan;

II) The evidence and the facts found by the board do not support the award;

III) The award illegally attempts to supersede the home rule charter of the city; and,

IV) The award violates the Arbitration Act in that it creates a contract for more than one year.

Each of these grounds is considered individually below.

The city also contends that the board had no authority to render an alternate award. In view of our disposition of the case, we need not pass on the merits of that contention.

## I

With respect to the first ground the city argues that the Arbitration Act does not provide sufficient standards relative to pension plans to support a decision thereon by the board. It is not clear whether the city is claiming that the absence of standards is evidence of a legislative intent that the board was to have no authority under the statute to adjudicate concerning pension plans, or that by reason of the lack of standards the statute constitutes an unconstitutional delegation of legislative power. Irrespective of which claim the city is attempting to make, we disagree.

Section 28-9.1-10 (which is in all relevant respects the same as §28-9.2-10, governing policemen) provides as follows:

"The arbitrators shall conduct the hearings and render their decision upon the basis of a prompt, peaceful and just settlement of wage or hour disputes between the fire fighters and the city or town by which they are employed. The factors, among others, to be given weight by the arbitrators in arriving at a decision shall include:

"(a) Comparison of wage rates or hourly conditions of employment of the fire department in question with prevailing wage rates or hourly conditions of employment of skilled employees of the building trades and industry in the local operating area involved.

"(b) Comparison of wage rates or hourly conditions of employment of the fire department in question with wage rates or hourly conditions of employment maintained for the same or similar work of employees exhibiting like or similar skills under the same or similar working conditions in the local operating area involved.

"(c) Comparison of wage rates or hourly conditions of employment of the fire department in question with wage rates or hourly conditions of employment of fire departments in cities or towns of comparable size.

"(d) Interest and welfare of the public.

"(e) Comparison of peculiarities of employment in regard to other trades or professions, specifically:

(1) Hazards of employment.
(2) Physical qualifications.
(3) Educational qualifications.
(4) Mental qualifications.
(5) Job training and skills."

The city argues that because only wage and hour disputes are mentioned, the statute must be interpreted to mean that the arbitrators may render decisions with respect to those issues only. On this reading, the statute vests no authority in the arbitrators to make an award affecting the pension plans in question.

However, an examination of the other provisions of the Arbitration Act shows that the city's extraordinarily limited interpretation of §28-9.1-10 is patently unreasonable. Section 28-9.1-2 declares that the purpose of the statute is to guarantee to the members of the fire department other well recognized rights of labor. The statute specifically includes the right to "bargain collectively concerning wages, rates of pay and other terms and conditions of employment." Section 28-9.1-2. Since strikes are prohibited, the means by which these rights are to be guaranteed is through arbitration. To limit the authority of the arbitration board to decisions involving only wages or hours would undermine the purpose of the statute. With respect to other issues, the firemen would have little bargaining power. They certainly would not be accorded other "well recognized rights of labor".

Furthermore, §28-9.1-7 explicitly provides that in the event agreement cannot be reached within 30 days, *"any and all unresolved issues* shall be submitted to arbitration." (Emphasis added.) We interpret this section to mean that the board may not only hear issues other than wage and hour disputes, it may also render a binding decision concerning them. Since many such issues (including the pension plan here at issue) are inextricably related to wage rates, any other construction of the statute makes little sense. We find further support for this interpretation in the legislative history of §28-9.1-9, relative to arbitration hearings. Originally, that section provided that as to matters which involved expenditures of money the board's decision was only advisory. By amendment in 1968, the statute was changed to make the board's decision binding on both parties as to all matters considered. Had the Legislature intended the board's authority to be limited to wage and hour disputes, surely such a proviso would have been included. We think it beyond question that the Arbitra-

tion Act empowers the board to render binding decisions regarding terms and conditions of employment as well as wage and hour disputes.

There is likewise no doubt that the provisions of an employee pension plan come within the meaning of "terms and conditions of employment". Virtually identical language in the National Labor Relations Act has been held to include pension plans. *Allied Chem. & Alkali Workers of America, Local No. 1* v. *Pittsburgh Plate Glass Co.,* 404 U.S. 157, 159, 92 S.Ct. 383, 387, 30 L.Ed.2d 341, 346 (1971); *Inland Steel Co.* v. *NLRB,* 170 F.2d 247, 251 (7th Cir. 1948), *cert. denied,* 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949). In the past we have recognized the persuasive force of federal cases in this field in view of the parallels between our system of labor regulations and the federal system. *Belanger* v. *Matteson,* 115 R.I. 332, 338, 346 A.2d 124, 129 (1975); *Almac's, Inc.* v. *R. I. Grape Boycott Comm.,* 110 R.I. 36, 290 A.2d 52 (1972).[1] Accordingly, we hold that the Arbitration Act grants the board the power to render a decision amending the policemen's and firemen's pension plans.

Alternately, the city apparently argues that the statutory grant of power to the board to amend pensions is an invalid delegation of legislative power because the absence of sufficient standards precludes judicial review. Again, we disagree.

In *City of Warwick* v. *Warwick Regular Firemen's Ass'n,* 106 R.I. 109, 256 A.2d 206 (1969), we upheld the delega-

---

[1] The city argues that the federal cases are inapposite because the National Labor Relations Act does not apply to a state and its political subdivisions. The objection misconceives the basis of our reliance on the federal decisions. We do not say they are controlling because the federal law applies; we say they are persuasive, although not binding, because the language interpreted therein is the same as that appearing in the statute in question.

tion of power to arbitrators in the Fire Fighter's Arbitration Act against a constitutional attack on the ground that the standards contained in the statute were adequate both to guide the arbitrators' actions and to allow review thereof. The city distinguishes that case on the ground that the statutory standards relied upon in that decision related solely to wages and hours, whereas here the arbitrators' decision dealt with pensions. However, our decision was not founded solely upon the statutory provision cited by the city. We also said:

> "We would direct attention to a further provision of the statute which we think in itself constitutes a standard to guide a board of arbitrators in their exercise of the delegated power. Section 28-9.1-2 contains a legislative statement of the public policy to be served by this legislation. It specifically states that the public policy is '* * * to accord to the permanent uniformed members of any paid fire department in any city or town all of the rights of labor other than the right to strike, or engage in any work stoppage or slowdown. To provide for the exercise of these rights, a method of arbitration of disputes is hereby established.'" *Id.* at 118-19, 256 A.2d at 211-12.

We think the standard to which we alluded is sufficient to support the power of the board to hear and decide issues relating to pension plans.

In a final attempt to establish that the board was without jurisdiction, the city details at some length the legislative background of the policemen's and firemen's pension funds. The heart of the argument is stated in the city's Memorandum in Opposition to Proposed Pension submitted to the board: "What the City is trying to establish is that the pension system as it may or may not exist in the City of East Providence was always controlled by the State Legislature and/or the City elected officials." It follows, according to the city, that the board is without authority to amend the pension system.

The simple answer to this argument is that the past practice of the Legislature is not relevant in this regard. The Arbitration Act gives the power to amend pensions to the board; the fact that prior to this Act the Legislature had delegated this power only to the city council is of no consequence.

For the foregoing reasons we hold that the city's challenge to the jurisdiction of the board is without merit.

## II

The city's second argument on appeal is that the board failed to consider the effects of the pension plan on the tax rate, and consequently its decision was based on insufficient evidence. The record does not support the city's contention. Lengthy hearings were held at which many exhibits were considered by the board. The financial impact of the pension plan was explicitly discussed in its opinion. The following discussion is illustrative:

> "The Board members, like everyone else, are aware that many state and local governments are in financial trouble and that one problem common to most of them is that, because of other financial pressures, they have not been matching increases in salaries each year with increases in their contributions to pension funds as they go along.
> "* * *
>
> "The Board did not ignore the burden which the City must bear during the next thirty or forty years to catch up to its amortization target under the present plan. However, in justice it could not use that circumstance as a factor for denying improvements." Decision and Award at 14-15.

There is no indication that the board's decision was anything but thorough and comprehensive. We do not find that it is without sufficient basis in fact.

## III

The city also argues that the board could not amend the pension plans in question because the power to establish a pension fund for policemen and firemen is vested in the city council by §2-9(8) of the East Providence City Charter. The city maintains that in accordance with art. XXVIII of amendments to the State Constitution, the so-called home rule amendment, the city charter supersedes the Arbitration Act. The city relies primarily on *Trice* v. *City of Cranston*, 110 R.I. 724, 297 A.2d 649 (1972). However, in that case we decided only that a decision by the city council to amend the firefighters' pension plan overrode an inconsistent decision made by the mayor. We did not say that the city council had the exclusive power to take such an action. In fact, our decision in that case lends support to exactly the opposite conclusion. We said that the power of the Legislature was paramount:

> "In *Marro* v. *General Treasurer*, 108 R.I. 192, 273 A.2d 660 (1971), we emphasized that the General Assembly's power to provide for and regulate the payment of pensions to policemen overrides any municipal charter provisions which purport to do the same. What was said about pensions due the Cranston police applies equally to that municipality's firefighters." *Id.* at 731, 297 A.2d at 653.

The board is given the power to amend the pension plans by statutes of state-wide effect enacted by the Legislature and which apply to all cities and towns. It follows that the board is not prevented from exercising this power by the provisions of the city charter.

We addressed this very point in *City of Cranston* v. *Hall*, 116 R.I. 183, 354 A.2d 415 (1976). There the conflict was between the city charter, which prescribed a particularized method for making promotions, and the Fire Fighters' Arbitration Act, which made promotion procedure a bargainable issue in a labor dispute. The city of Cranston

maintained that in accordance with the home rule amendment the city charter should control. We said there that nothing in the home rule amendment inhibited the General Assembly's overriding power to legislate even on local matters as long as it did so in a general act applicable to all cities and towns alike and did not affect the form of government of any city or town. We noted that the Fire Fighters' Arbitration Act made a collective bargaining procedure available to firefighters of *any* city or town, and concluded that it was an act of general application which superseded any controverting home rule charter provision. Our decision in *Hall* controls our decision in the case at bar. Accordingly, we find that the provisions of the Arbitration Act granting the board the power to amend policemen's and firemen's pension funds take precedence over any inconsistent provisions of the East Providence City Charter.

## IV

The final ground advanced by the city in support of its appeal is that the attempted creation of a five-year contract with respect to the pension system was in violation of §28-9.1-6.[2]

All parties concede that under the terms of the foregoing section, the city may not be bound for a period in

---

[2] General Laws 1956 (1968 Reenactment) §28-9.1-6 (similar in all relevant respects to §28-9.2-6) provides as follows:

"It shall be the obligation of the city or town, acting through its corporate authorities, to meet and confer in good faith with the representative or representatives of the bargaining agent within ten (10) days after receipt of written notice from said bargaining agent of the request for a meeting for collective bargaining purposes. This obligation shall include the duty to cause any agreement resulting from the negotiations to be reduced to a written contract, provided that no such contract shall exceed the term of one (1) year, unless a longer period shall be agreed upon in writing by the corporate authorities and the bargaining agents, but in no event shall such contract exceed the term of three (3) years.

excess of one year. The problem in the case at bar arises because in granting the unions' request to abolish the age requirement for retirement on a pension, the board attempted to soften the impact by introducing the changes gradually over a five-year period — adding to the present options that of retiring after 24 years of service at any age in fiscal year 1975-76, after 23 years in fiscal year 1976-77, and so on down to 20 years at any age commencing in November 1979.

We agree with the city that the proposed pension plan revisions which were to become effective after October 31, 1976, cannot be binding on the city. The question remains, however, whether only that portion of the award is rendered nonbinding, or whether the entire award is invalid.

In our opinion the entire award should not be invalidated. Where there is a contractual agreement to arbitrate, the generally accepted view is that even if an award exceeds the scope of the arbitration agreement it is not invalid in toto but only insofar as it is excessive, provided that the award is of such a character that the court can separate its parts without doing an injustice. *Enterprise Wheel & Car Corp.* v. *United Steelworkers of America,* 269 F.2d 327 (4th Cir. 1959), *rev'd in part,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Local 63, Textile Workers Union of America* v. *Cheney Bros.,* 141 Conn. 606, 109 A.2d 240 (1954); 6 C.J.S. *Arbitration* §117 (1975).

We see no reason not to apply the above contractual rule to this case. In doing so, we find that there is no practical difficulty in severing the void part of the award and giving effect to the provisions relating to the first year of the contract. Indeed, it is particularly easy in the case at bar because the award was designed to take effect in yearly steps anyway. There is no doubt as to what provisions were intended to go into effect in the first year.

Furthermore, upholding the pension increase as to the first year only, does not prejudice any of the parties.

For all of the foregoing reasons, the petition for certiorari is granted. The decision of the board relative to the pension funds subsequent to October 31, 1976, is quashed. The record certified is remanded to the board with direction that it modify and revise its decision in reference to the pension funds involved so that it is limited to the changes set forth in that decision which were to be effective in the fiscal year, November 1, 1975 through October 31, 1976, in accordance with this opinion. Jurisdiction is retained in this court to review any decision that may subsequently be entered, and it may be invoked by either of the parties within 30 days after it receives a copy of the board's reversed decision.

Mr. Justice Paolino did not participate.

*Orlando A. Andreoni,* City Solicitor, *Joseph T. Little,* Asst. City Solicitor, for petitioner.

*Taft & McSally, Bernard F. McSally,* for Local 850, International Association of Firefighters, AFL-CIO et al.; *Lovett & Linder, Ltd., Stephen G. Linder, Sumner David Stone,* Lexington, Mass., for East Providence Lodge No. 1, Fraternal Order of Police et al.