DECISION
This case was heard by this Court, sitting without a jury, on January 22 and 23, 1997, on plaintiff's two-count complaint. In Count I, plaintiff alleges that the State of Rhode Island Department of Health (the "State" or "RIDOH") breached the terms of the Collective Bargaining Agreement (the "CBA") in effect between Council 94 and the State. In Count II, the plaintiff alleges that Rhode Island Council 94 ("Council 94") breached its duty of fair representation. Jurisdiction of this Court is pursuant to G.L. 1956 § 8-2-14 and § 28-7-29.
Facts and Travel
On December 24, 1991, RIDOH announced that it intended to abolish two Narcotics Inspector positions and one Senior Inspector position. These positions were classified positions covered by the terms of the collective bargaining agreement between the State and Council 94. Additionally, RIDOH decided to create three new Investigator positions in a new "Office of Investigations." It was determined that the new positions would not be union positions and would not be included in the Local 2870, Council 94, AFSCME, bargaining unit. The RIDOH notified Council 94, the bargaining unit representing the three employees holding the abolished positions, of its decision. In response, Council 94 filed a grievance under the Grievance and Arbitration clause contained in Article 26 of the CBA and two unfair labor practice charges with the Rhode Island State Labor Board in an attempt to accrete the new Investigator positions to its bargaining unit. (Defendant's Exhibit G) In a letter dated January 8, 1992, John Vars made an official request to accrete the investigator positions. (Defendant's Exhibit E)
On April 1, 1992, the State Labor Board dismissed the unfair labor charge and accretion petition on the ground that since the new positions had not yet been filled, the petitions were prematurely filed. (Defendant's Exhibit N) Joseph Mulvey, Chairman of the Rhode Island State Labor Relations Board, explained that "it has been the Board's policy to refuse to entertain accretion petitions unless and until the position or positions at issue have been filled. Once a position has been filled and the Board has investigated the actual duties of that position, it then makes a determination as to whether or not the position should be accreted to the existing unit. In reaching its decision to accrete positions to a Bargaining Unit the Board considers, but is not bound by, agreements of the parties concerning inclusion or exclusion." Id. Council 94 later refiled both the unfair labor charge and the accretion petition. (Defendant's Exhibit O)
In May 1992, the State and Council 94 commenced negotiations with respect to the proposed layoffs and creation of three new non-union positions. On December 21, 1992, the State and Council 94 entered into a Consent Agreement resolving all grievances, arbitrations, and potential unfair labor practice charges regarding the Narcotics Inspector positions and the Office of Investigation. (Plaintiff's Exhibit No. 5)
Under the terms of the Consent Agreement, the three individuals who were to be laid off were placed on a temporary basis in the newly created investigator positions. The parties agreed to accretion of the investigation classification to the Council 94 bargaining unit. In return, Council 94 agreed to withdraw the pending arbitration and all other grievances and complaints relating to the matter. John Vars, Senior Business Agent for Council 94, stated that "Council 94 entered into the Settlement Agreement in order to prevent the layoff of three members of the Local 2870 bargaining unit and the potential bumping which would have resulted from these layoffs, to avoid the uncertainty of the outcome of its grievances and unfair labor practices and in consideration of the time and expense which would have been involved in pursuing these actions." (Affidavit of John Vars)
On February 9, 1993, the plaintiff attempted to file a grievance with the union protesting RIDOH's alleged failure to post the Investigator positions. (Plaintiff's Exhibit No. 1) Plaintiff testified that he learned of the creation of the positions and that the positions were being filled without having been posted or bid upon. Council 94 refused to accept the grievance on the ground that it had agreed to place the three employees in the investigator positions as part of the Consent Agreement as a means of preventing their layoffs and resolving the various grievances and unfair labor practice charges it had filed against the State. Plaintiff did not file a grievance with the State nor did he file an appeal under the State Merit System law.
In April 1993, plaintiff commenced the instant litigation against the State and Council 94. In Count I of his complaint, plaintiff alleges that the State breached the terms of the Collective Bargaining Agreement in effect between Council 94 and the State. Plaintiff additionally contends that the State violated his right under the CBA to bid on the position of Investigator. Plaintiff asserts that he is entitled to bid on the position and to be appointed to the position over a less senior employee. Plaintiff contends that he has suffered a "loss of professional advancement, loss of other conditions of employment and other irreparable harm." In Count II of his Complaint, plaintiff contends that Council 94 breached its duty of fair representation by agreeing to allow RIDOH to fill the three positions without posting or bidding, by allowing the positions to be filled with individuals less senior to him, and by failing to process his grievance. Plaintiff asserts that Council 94's failure to process his grievance was arbitrary and discriminatory and contends that as a result of the action by Council 94 he has "suffered a loss of pay, loss of professional advancement and other irreparable harm."
The State asserts that plaintiff's claim must fail in that he failed to exhaust the administrative remedies available to him and failed to meet his burden of proof with respect to both the duty of fair representation and the breach of contract claim. Council 94 contends that plaintiff failed to exhaust his administrative remedies under the CBA and failed to prove a breach of the union's duty of fair representation.
With respect to plaintiff's claim against RIDOH and Council 94, this court must look to federal case law for guidance. On numerous occasions, Rhode Island has recognized the persuasive force of federal practice in the field of labor relations. See,Board of Trustees, Robert H. Chaplin Memorial Library v. R.I.State Labor Board, et al., May 15, 1997, No. 95-240 M.P., No. 95-223 M.P. at 7; Fraternal Order of Police v. Westerly,659 A.2d 1104 (R.I. 1995); City of East Providence v. Local 850,ETC., 117 R.I. 329, 366 A.2d 1151 (1976).
In order to recover against either the employer or the union, the plaintiff must prove both that the employer violated the collective bargaining agreement and that the union breached its duty of fair representation. DelCostello v. InternationalBrotherhood of Teamsters, 462 U.S. 151, 165, 76 L.Ed.2d 476, 489, 103 S.Ct. 2281, 2291 (1983). Generally, employees must exhaust contractual grievance procedures before bringing actions against employers for breach of a collective bargaining agreement and before bringing a claim against the union for breach of the duty of fair representation. Carr v. Pacific Maritime Ass'n,904 F.2d 1313 (9th Cir. 1990).
Article 25 of the Collective Bargaining Agreement sets forth the Grievance Procedure. (Trial Exhibit 4) Section 25.1 provides: "For the purpose of this agreement, the term `grievance' means any difference or dispute between the State and the Union, or between the State and any employee with respect to the interpretation, application, or violation of any of the provisions of this agreement." Section 25.2 of the CBA provides as follows:
 "(a) A grievance shall be presented by the aggrieved employee and/or by the union within five working days of the employee's knowledge of the occurrence of such grievance . . ."
 "(e) Nothing contained herein deprives an individual employee of their right to process their grievance without union representation . . ."
Section 25.3 of the CBA vests the plaintiff, without union representation, with the right to submit his grievance to RIDOH and with the right to have his grievance processed before the Personnel Appeal Board as set forth in R.I.G.L. § 36-3-10(a)(4).
In the instant case, plaintiff attempted to file a grievance with the union. (Trial Exhibit 1) However, Council 94 refused to accept plaintiff's grievance. Plaintiff did not pursue his grievance through the Personnel Appeals Board or pursue his grievance himself without union representation. Plaintiff asserts that he was never advised that he could proceed with his grievance on his own, nor told of his right to pursue an appeal through the Personnel Appeals Board. However, a union's failure to inform one of its members of the existence of the administrative appeals process does not excuse the member's ignorance of the process. Evangelista v. Inlandboatmen's Unionof Pacific, 777 F.2d 1390 (9th Cir 1985). Further, as a member in good standing in the Union, plaintiff was bound by all of the contractual provisions of the CBA. Ritacco v. Brown SharpeMfg. Co., 96 R.I. 302, 191 A.2d 158 (1963). As such, plaintiff failed to exhaust the administrative remedies under the CBA.
Notwithstanding plaintiff's failure to secure relief through the contractual remedial procedures of the CBA, plaintiff may obtain judicial relief of his breach of contract claim and breach of fair representation claim in certain instances. Vaca v.Sipes, 386 U.S. 171, 17 L.Ed.2d 842, 854, 87 S.Ct. 903 (1967). First, when the conduct of the employer amounts to a repudiation of the contractual procedures, the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action. Id.
There is no evidence in the record to support a finding that RIDOH's conduct amounted to a repudiation of the contractual procedures of the CBA. The State decided to create three non-union positions and maintained that the positions were not required to be bid upon. According to John Vars, plaintiff's February 9, 1993 grievance of the State's failure to post the Investigator positions was not accepted by Council 94 "solely because it lacked merit on its face. The State is contractually obligated to post only those newly created positions and vacancies which are part of the bargaining unit. The Investigator positions concerning which plaintiff grieved did not become part of the bargaining unit until accreted by the Labor Board in October, (sic) 1993."
Article 11 of the CBA sets forth the bidding and posting procedure for positions within the bargaining unit. Article 11.4 provides in part: "All new and vacant positions to which recruitment is to be initiated shall be posted on bulletin boards in all work areas within the bargaining unit for a period of seven calendar days." The Investigator positions were not part of the bargaining unit until October 5, 1993. Accordingly, the State was not required to post the positions at the time that they were created and was not in breach of the CBA.
The second exception to the failure to exhaust contractual remedial procedures occurs when the union has sole power under the contract to invoke the higher stages of the grievance procedure and wrongfully refuses to process the grievance thereby preventing the plaintiff from exhausting his contractual remedies. Vaca, 386 U.S. at 184, 17 L.Ed.2d 854, 87 S.Ct. at 914. In such case, the employee may seek judicial enforcement of his contractual rights. Id.
Although the union had the sole power to invoke arbitration under Article 26 of the CBA and refused to process plaintiff's grievance, the union did not prevent the plaintiff from individually pursuing his grievance in accordance with Article 25 with RIDOH or the Personnel Appeals Board.
Additionally, the union did not act wrongfully in refusing to process the plaintiff's grievance. This court must be deferential to the union's actions and may not substitute its own views for those of the union. Miller v. U.S. Postal Service, 985 F.2d 9
(1st Cir. 1993). It is well settled that
 "[i]n providing for a grievance procedure and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures."
 * * *
 "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully." Vaca, 386 U.S. at 191, 192, 184, 17 L.Ed.2d 858, 859, 87 S.Ct. at 917, 918.
In the instant case, the union entered into the Consent Agreement to prevent the layoff of three members of the bargaining unit, to prevent the potential bumping which would result from the layoffs, and to avoid the uncertainty of the outcome of the grievances and unfair labor practices. The union did not wrongfully refuse to process plaintiff's grievance. To allow plaintiff to bring his claim against the State and the union without exhausting the procedural remedies, "would create perverse incentives to avoid grievance procedures that would undermine our traditional deference to private dispute resolution in labor relations." Carr, 904 F.2d at 1318.
For such reasons, plaintiff's request for judgment as well as interest, costs, and attorney's fees is denied.
Counsel shall submit the appropriate judgment for entry.