FRED NAZARIAN *vs.* LINCOLN FINANCE CORPORATION *et al.*

JANUARY 12, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

498

Flynn, C. J. This action of the case was brought by the plaintiff under general laws 1938, chapter 485, §4, to recover payments made by him to the defendants for an alleged usurious loan in connection with the purchase of an automobile. It was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff in the sum of $2,418 and costs against the defendant Lincoln Finance Corporation and a decision in favor of the other defendant for costs. The case is before this court solely on the bill of exceptions duly prosecuted by Lincoln Finance Corporation.

The following facts among others appear in evidence. The plaintiff desired to purchase a 1941 Buick automobile which was owned by defendant Sidney Schaffer doing business as Stadium Motor Sales Company, hereinafter called the seller. The seller's manager offered to sell and plaintiff agreed to buy the Buick for the price of $2,800 in cash at the time of delivery. During the negotiations the seller made no offer or agreement to sell the car to plaintiff on a time, credit, or deferred payment basis at a price in excess of $2,800. He was not interested in such a risk. Plaintiff had only $300 in cash and the seller agreed to allow $640 as the trade-in value of his 1940 Plymouth car. Thus it became necessary for plaintiff to obtain the balance of $1,860 to complete the transaction.

He first attempted to borrow this amount from Franklin Finance Company of Pawtucket with whom he previously had done business, but was unable to locate its manager by telephone. He then asked the seller's manager for the name of the loan company which ordinarily financed his sales and was informed that it was Lincoln Finance Corporation, hereinafter called the loan company. Pursuant to plaintiff's request the seller's manager telephoned the loan company to find out if it would be interested, and in re-

sponse thereto John Baker, who controlled that company, came to the seller's place of business. There he met plaintiff, talked with him apart from the seller's manager, and personally made out the credit report which ordinarily would have been obtained and written by the seller if he were selling on a time basis.

These negotiations led to an agreement between the loan company and plaintiff, but the evidence as to certain of the details is in conflict. According to plaintiff, Baker never disclosed the exact amount of the interest he was charging, but in reply to plaintiff's inquiry merely stated that the interest "won't be too much * * *." Plaintiff also insisted that the total amount of his obligation was not written in the agreement when he signed it, but these facts are contradicted by the testimony of Baker and the seller's manager.

In any event plaintiff signed an agreement which was drawn up by Baker in the form of a conditional sale and an attached promissory note obligating plaintiff to pay $2,330 at the rate of $50 per week. The difference between that amount and the $1,860 necessary to complete the transaction between the seller and plaintiff was $470, which represented interest and finance charges exacted by the loan company. The seller's manager merely witnessed plaintiff's signature thereon and upon receipt of only $1,860 immediately endorsed the note without recourse and assigned the agreement to the loan company. Thereafter, according to his testimony, plaintiff received by mail from the loan company a passbook and letter in which his total obligation appeared.

After receiving the passbook plaintiff felt that he had been charged too much interest and consulted an attorney. As a result of that attorney's negotiations with the loan company the latter agreed to credit $100 "on expiration of the contract," and such a memorandum was written in the passbook. Plaintiff then made the first payment. However, after making several further payments amounting to

$250 he consulted another lawyer. As a result of a conference with Baker, at which the matter of a possible violation of the usury statute was discussed, a further credit of $135 was marked in the plaintiff's passbook. Evidence for the loan company tended to explain that these credits were not connected with any alleged usury or illegal interest; that the credit of $100 was given to cover insurance which plaintiff had obtained independently; and that the second credit of $135 was the consideration for which plaintiff signed a general release to the loan company of all claims and demands, especially those arising from "any action based on deal of Buick Sedan 1941 seven passenger * * *."

On his way home, according to plaintiff, he was still not satisfied and decided to pay up the entire balance claimed by the loan company. Accordingly he obtained a loan from the Franklin Finance Company and on the same day paid the defendant loan company the balance of $1,795 as shown on the passbook after the credits of $100 and $135 were allowed. Thereafter the instant cause of action was commenced under the so-called usury statute, G. L. 1938, chap. 485, §4, to recover such payments of principal and interest.

The trial justice, after discussing the evidence, found that the seller and plaintiff actually had agreed upon a sale of the Buick for $2,800 in cash at the time of delivery; that the seller was interested only in a cash sale and did not intend to make a sale at any additional price upon a time or credit basis; that he was not concerned with where plaintiff obtained the money or the terms of the loan agreement; and that the seller did not make any loan. He therefore rendered a decision in favor of the seller for costs.

As to the loan company, however, he found in substance and effect that the agreement to finance the plaintiff was negotiated entirely by Baker and plaintiff; that it was separable from the real sales agreement between plaintiff and seller; that Baker did not come to seller's place of

business to make a loan to the seller or to purchase an automobile, but that he intended to loan and did loan $1,860 to the plaintiff; that Baker who did not own the car drew the agreement in the form of a conditional sale from the seller to plaintiff to cloak the real intended transaction; and that the charges exacted for making such loan and for forbearance of the debt were in violation of the statute against usury. He therefore rendered a decision for the plaintiff against the loan company in the amount of $2,418, representing the principal and interest payments made by plaintiff to the loan company under the usurious agreement, and costs.

The defendant loan company, in support of its bill of exceptions, contends that conditional sales generally do not come within the purview of a usury statute which, as here, deals only with loans and forbearance of a debt, and it has cited a number of cases from other jurisdictions to that effect. A leading example of such cases is *Commercial Credit Co.* v. *Tarwater,* 215 Ala. 123, 48 A.L.R. 1437. In our view. it is unnecessary to discuss those cases in detail because plaintiff concedes that a true conditional sale would not come within the purview of our statute, G. L. 1938, chap. 485. He contends, however, that the circumstances prevailing here present an exceptional case; that the trial justice found that although the agreement was in form a conditional sale the real transaction was in substance and effect a loan and forbearance of a debt; and that the evidence to support such finding is ample, so that we cannot say the decision is clearly wrong.

At the trial in the superior court there was no serious claim by the loan company that the transaction, if declared to be a loan and forbearance, nevertheless was not in violation of the usury statute. It was contended merely that the transaction was a sale "on time" and that there was no legal limit to the amount it could charge for the additional risk involved. Further it is conceded by both counsel that in this kind of case the intention of the parties is controlling

and that each case must be decided upon its particular facts.

In our judgment the evidence in the instant case on many important issuable facts is conflicting and different inferences might reasonably be drawn therefrom. The trial justice has given reasons for his findings and for the values he placed upon the testimony of the parties. After consideration of all the evidence we cannot say he was clearly wrong in concluding that the transaction between the loan company and plaintiff was not a true conditional sale; that regardless of form it was intended by Baker to be and was in substance and effect a loan by his company of $1,860 to plaintiff; and that the additional charge of $470 and the requirement of specified weekly payments for such loan and forbearance constituted a violation of the statute.

But it is contended for the loan company that even if the transaction was in violation of the statute plaintiff had executed a release of all claims in connection with this particular sale and therefore had made his closing-out payment under a new agreement. In our judgment the loan company takes nothing by this contention. In the prevailing circumstances the release is of no consequence because it was given without consideration. The mere crediting of a part of the usurious interest charged for a loan made by it under an agreement which is declared by the statute to be *void* as to *both principal and interest* does not of itself constitute a valid consideration for the alleged general release.

In this connection the loan company has cited authorities to the effect that by remitting that part of the interest which is illegal such an agreement can be purged of the taint of usury and thereby can become a new and legal agreement. Some of these cases are suits in equity seeking specific relief where other equitable principles may govern. In certain others the effect of usury is confined to the interest and in others it does not appear that the pertinent statutes declare the original agreement void as to both

principal and interest as is the case here. In any event where the lender, as here, relies for the alleged consideration upon a mere crediting of part of the usurious interest collected under an agreement which the statute declares to be entirely void as to both principal and interest, and where the evidence clearly indicates no intention of making a new and separate agreement but rather an insistence upon the validity of the original, we think those cases would not apply.

The next contention presents the important question whether the trial justice erred in awarding plaintiff the full amount of his payments of both principal and interest. In our judgment the answer thereto depends upon the application of G. L. 1938, chap. 485, §4, under which this action of the case was brought. The pertinent part of that section reads as follows:

> "Every contract hereafter made in violation of any of the provisions of § 2 of this chapter, and every mortgage, pledge, deposit, or assignment made or given as security for the performance of such contract, shall be usurious and void: * * * And if the borrower shall, either before or after suit, make any payment on such contract, either of principal or interest, or of any part of either, and whether to the lender, or to any assignee, indorsee or transferee of such contract, the said borrower shall be entitled to recover from the lender the amount so paid, in an action of the case."

The language of that section is clear and not ambiguous. It does not restrict the relief granted thereby merely to a defense by the borrower against the lender's recovering more than legal interest in an action brought against him by the lender. On the contrary it provides clearly for positive relief to the borrower by way of an action at law brought by him against the lender. It expressly authorizes such an action by the borrower to recover not only his payments of usurious interest but also *all* of the principal *and* interest that he has paid to the lender under such an invalid loan agreement.

Plainly the policy of the legislature was to provide severe penalties against the lender for his violation of the statute as the best method in its judgment to prevent usurious transactions. In the light of such policy, we think that the trial justice's decision, awarding recovery of both principal and interest payments, was not erroneous. If the result seems harsh the penalty can be avoided easily by writing loan agreements that exact no more than the law allows.

But the loan company further urges that the cases of *Moncrief* v. *Palmer,* 44 R. I. 37, and *St. Germain* v. *Lapp,* 72 R. I. 42, prevent the borrower in any event from recovering the principal. It is true that in the *Moncrief* case this court held the borrower was required to pay or offer to pay the full amount of principal and 6 per cent interest thereon as a condition precedent to his right to obtain the cancellation of a note and certain other specific equitable relief. Apparently the court decided that notwithstanding the statute the complainant there had sought specific affirmative relief cognizable only in equity and that established principles of equity should be applied by it as a court of conscience. Accordingly it was decided that he should first do equity by offering repayment of principal plus legal interest at 6 per cent before he was entitled to such specific equitable relief.

Similarly in the *St. Germain* case a borrower brought a bill in equity seeking to have the court cancel mortgages and other instruments which were held as security for an alleged usurious loan. Because of the precedent established by the *Moncrief* case we felt constrained as a court of equity to apply the same principle. But in determining what equity required of such a borrower-complainant, we there made a distinction between principal and interest and held that equity and morality required complainant to pay or offer to pay only the principal before he could obtain such specific equitable relief.

In that case, however, we discussed the change in the

policy of the state which was effected by the statute in question, and at page 48 said: "Moreover, the legislature made the new policy one of positive benefit to the borrower by enabling him to recover any principal or interest which he may have paid to the lender on the invalid loan. By this provision it is clear beyond doubt that the legislative intent was to strip the violator not only of any increment accruing from the loan but also of the entire principal of the loan itself."

In the instant case it is to be noted that plaintiff is not seeking any specific affirmative relief by a bill in equity and is therefore not subject to the same equitable principle as was applied to the complainant in each of the above-cited cases. On the contrary plaintiff here has followed the express provisions of the statute by bringing an action at law to recover payments of both principal and interest made under an agreement which is declared to be usurious and totally void. In accordance with such provisions of the statute, the policy thereof as interpreted by the above-quoted and other language found in the case of *St. Germain* v. *Lapp, supra,* and the findings of the trial justice, we think that the plaintiff in the prevailing circumstances is entitled to recover all such payments of principal and interest. In our judgment to hold otherwise would amount to a distortion of the plain language of the statute and a denial of the relief expressly therein provided as the established state policy.

The exception of the defendant Lincoln Finance Corporation is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*William J. George,* for plaintiff.

*Walter J. Hennessey,* for defendant Lincoln Finance Corporation.