In re Thomas HARRINGTON and Diana Harrington, Debtors.

John BOYAJIAN, Trustee, Plaintiff,

v.

UNION CAPITAL CORPORATION and Marquette Credit Union, Defendants.

Bankruptcy No. BK–7900378.
AP 80–0020.

United States Bankruptcy Court, D. Rhode Island.

Oct. 22, 1980.

John Boyajian, North Providence, R. I., trustee.

Joseph T. Little, East Providence, R. I., for Marquette Credit Union.

Owen B. Landman, Providence, R. I., for Union Capital Corporation.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Defendants' motion to dismiss the Trustee's complaint which seeks: (1) to set aside a loan made to the debtors as void under the Rhode Island Secondary Mortgage Loans Act, R.I.G.L. § 19–25.2–1, et seq., and (2) the return of all principal, interest, and other charges paid under the loan in question.

The relevant facts are undisputed: On April 18, 1977, Union Capital Corporation loaned $4,200 to Thomas and Diana Harrington, secured by an equity mortgage covering their home in Coventry, Rhode Island. Union thereafter assigned the loan to the Marquette Credit Union, and the Harringtons paid the loan in full on December 16, 1977. On November 1, 1979, the Harringtons filed a Chapter 13 petition with this Court.

On February 4, 1980, the Chapter 13 Trustee filed this complaint alleging that Union, in making the loan to the Harringtons, demanded, collected, or received unauthorized charges in violation of the Rhode Island Secondary Mortgage Loans Act, R.I. G.L. § 19–25.2–1, et seq., and seeks the return of all monies paid under the loan originally made by Union and later assigned to Marquette. Marquette and Union join in a motion to dismiss, based on three grounds: (1) that the Secondary Mortgage Loans Act requires the lender's conviction of a misdemeanor as a condition precedent to bringing a civil action; (2) that the remedy section of the statute does not provide the relief requested; (3) that the Complaint is barred by the doctrine of laches. Marquette argues in its own behalf, that as a credit union, it is exempt from the provisions of the statute.

This dispute involves the interpretation of several provisions of the Rhode Island Secondary Mortgage Loans Act. Our research, as well as that of the parties, discloses no cases by either the Rhode Island Supreme Court or the Rhode Island Superi-

or Courts construing this statute. As this appears to be a question of first impression, it must be resolved in light of analogous case law and the general principles of statutory construction as articulated by the Rhode Island Supreme Court.

Since this is a motion to dismiss, we are not to determine any question of fact. We must accept the allegations of the complaint as true. *Gardner v. Toilet Goods Assn.*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

The issues raised in this dispute are:

1. Whether conviction of a misdemeanor is a condition precedent to the maintenance of a civil action under R.I.G.L. § 19–25.2–29.

2. Whether R.I.G.L. § 19–25.2–29 allows recovery of funds paid to a lender who has violated that Act;

3. Whether the defense of laches applies in this case; and

4. Whether Marquette, because it is an assignee of the loan, is exempt from the provisions of R.I.G.L. § 19–25.2–29.

For the reasons discussed as to each issue separately below, the motion to dismiss is denied.

### I. *The Availability of a Civil Remedy under the Act*

The section of the Secondary Mortgage Loans Act dealing with remedies for violation of the statute is § 19–25.2–29:

Any person ... who shall violate ... any of the provisions of this chapter, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than five hundred dollars ($500) or by imprisonment of not more than six months.... Complaints ... may be made by the director.... The attorney–general shall prosecute all complaints under this chapter.

Any secondary mortgage not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes a misdemeanor under this section, shall be void and the lender shall have no right to collect or receive any principal, interest, or charges whatsoever, unless the licensee shall prove that such act was the result of an accidental or bona fide error. R.I.G.L. § 19–25.2–29.

The plaintiff's position is that the statute provides two separate remedies: one criminal and one civil. The criminal remedy, fine or imprisonment for conviction of a misdemeanor, is available only to the state through an action brought by the Attorney–General. The civil remedy, in the plaintiff's view, is available to borrowers for acts "constituting misdemeanors", which include any violation of the section, but that a conviction is not necessary before the civil action can be maintained.

Union and Marquette argue that criminal conviction of a misdemeanor is a condition precedent to civil liability under the Act, and that criminal prosecution for a misdemeanor can only be brought by the State in a court of competent jurisdiction, not the bankruptcy court. Defendants then argue that in this case, the bankruptcy court is being asked to determine whether a misdemeanor has been committed, and could be in the position of finding the defendant "guilty", only to discover that the defendants are later acquitted in a criminal prosecution.

▪ In resolving the question of the scope of the statute's remedy provisions for violation of the Act, we note that the Rhode Island Supreme Court has enunciated several principals of statutory construction which, although stated in other contexts, are pertinent to our inquiry. In construing a statute where the intent of the legislature is in issue, a court must consider the statute in its entirety, viewing the language in light of the purpose and nature of the legislation. *See Mason v. Bowerman Bros., Inc.*, 95 R.I. 425, 187 A.2d 772 (1963); *Chaharyn v. Department of Employment Sec.*, 85 R.I. 75, 125 A.2d 241 (1956). Where the language is ambiguous, the court must give due regard to legislation relating to the same subject matter, so that there will be consistency among similar laws. *See Pick-*

*ering v. American Empl. Ins. Co.*, 109 R.I. 143, 282 A.2d 584 (1971). Additionally, language which is not defined in the statute should be given its ordinary and customary meaning in light of the purposes which motivated the enactment of the statute, *see Shulton, Inc. v. Apex, Inc.*, 103 R.I. 131, 235 A.2d 88 (1967), unless a contrary intention is clear on the face of the legislation. *See Potowomut Golf Club Inc. v. Norberg*, 337 A.2d 226, 114 R.I. 589 (1975); *Pacheco v. Lachapelle*, 91 R.I. 359, 163 A.2d 38 (1960).

The Rhode Island Secondary Mortgage Loans Act was passed as part of a package of legislation apparently designed to regulate several types of commercial transactions, with consumer protection in mind. Three new statutes, the Education Lending Act, R.I.G.L. § 19–25.1–1 et seq., the Loan Business Act, R.I.G.L. § 19–25.3–1 et seq., and the Secondary Mortgage Loans Act, were adopted together as Chapter 269 of the Public Laws of 1966. The legislation included amendments to strengthen the existing usury statute, R.I.G.L. § 6–26–2, and the Small Loan Business Act, R.I.G.L. § 19–25–1 et seq. A comparison of the three new statutes with the Small Loan Business Act indicates that many of the provisions of these statutes were modeled after the Small Loan Business Act. All require licensing by the Department of Business Regulation, record keeping and annual reports, and have similar grounds for revocation of licenses. Additionally, the penalties for violation of both the Secondary Mortgage Loans Act and the Loan Business Act are almost identical to those in the Small Loan Business Act.[1]

■ The intent of the Legislature, in our view, in adopting the Secondary Mortgage Loans Act and its companion statutes, was to provide for a comprehensive scheme of state regulation of secondary mortgage transactions for the protection of consumer borrowers. A "secondary mortgage loan" is defined in the statute to exclude loans secured by commercial real estate, or by dwellings with more than four units. § 19–25.2–1. The comprehensive scope of the Act includes provisions governing interest rates, licensing of lenders, maximum service charges, acceleration clauses, waiver of rights by a borrower, installment payments, assignment of wages, a prohibition of confessions of judgment, a requirement that a borrower be given a statement of account, and that the lender refrain from false representations. The clear legislative intent to protect consumer–borrowers from overreaching by lenders runs all through the statute in question.

This conclusion is bolstered by the Rhode Island Supreme Court's interpretation of the Small Loan Business Act, which, as noted earlier, creates a similar regulatory scheme. In *Colonial Plan Co. v. Tartaglione*, 50 R.I. 342, 147 A. 880 (1929),[2] where intent to violate the Small Loan Business Act was completely absent, the court construed the purpose of the statute as follows:

> The statute does not permit the lender to make such an arrangement [violative of the statute] even with a willing borrower. To permit it would open the door to the very abuses and opportunities to take advantage of small borrowers which the statute is designed to prevent.... Our statute is drastic, it plainly is intended to prevent advantage being taken of small borrowers, who often are driven into improvident arrangements by their necessities. *Supra* at 344–45, 147 A. 880.

The Secondary Mortgage Loan Act's penalty section 19–25.2–29, provides: (1) that

---

1. The Small Loan Business Act provides that any person who violates any of the several provisions of the Act shall be subject to prosecution of a misdemeanor by the Attorney–General. This section goes on to provide that "[a]ny contract of loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes a misdemeanor ... shall be void...." § 19–25–36. The major difference between this section and its counterpart in § 19–25.2–29 of the Secondary Mortgage Loans Act is that violations resulting from accident or bona fide error are not excused.

2. We take the liberty here of supplying a little nostalgia, circa 1929, in that this writer's father was counsel for the losing Colonial Plan Co., whose principal officer was in turn his father.

anyone violating any of the provisions of the Act shall be guilty of a misdemeanor, punishable by a fine of not more than $500 or up to six months imprisonment, or both, and (2) that in the case of an act which "constitutes a misdemeanor under this section," the second mortgage is void and the lender loses his right to collect principal, interest, or other charges.

The question then, is what is meant by "constitutes a misdemeanor under this section." Nowhere in the Act is the word "constitutes" defined, and our research discloses no cases where this word has been construed. In line with the principals of statutory construction set forth earlier, *see Potowomut Golf Club, Inc. v. Norberg, supra*; *Pacheco v. Lachapelle, supra*, and in the absence of judicial guidance, the word "constitutes" should be given its ordinary and customary meaning, which is "to make up, comprise, or to form." Webster International Dictionary. Read in this light, the phrase "constitutes a misdemeanor" means any act, the elements of which comprise or "make up" a violation of any of the provisions of the Secondary Mortgage Loans Act, and is not limited to acts which have been the subject of a criminal prosecution and misdemeanor conviction.

Based on this reading of the statute, we reject the position of Union and Marquette that conviction of a misdemeanor is a condition precedent to bringing a civil action for violation of the Secondary Mortgage Loan Act. The penalty provision of this statute sets forth two separate and independent remedies, one criminal and one civil. We find support for this interpretation in that the last sentence of the civil penalty provision of the statute allows the defense of bona fide error to be raised by lenders in civil actions, to escape the harsh sanctions of the statute. The fact that no such defense is provided against criminal prosecutions adds further support to our analysis. Moreover, it is doubtful that the Rhode Island Legislature would, without more specific language, require a civil plaintiff to meet the same high burden of proof that is required of the state in a criminal

prosecution. Clearly, the Legislature, in providing an additional defense against civil actions, intended that the civil and criminal remedies should be distinct, and independent.

We conclude, based upon what we perceive to be the intent of the Legislature in establishing a regulatory scheme which protects borrowers in secondary mortgage transactions, together with our interpretation of the Act's penalty provisions, that § 19–25.2–29 provides a separate and independent civil remedy for violation of the Secondary Mortgage Loans Act. To require conviction of a misdemeanor as a condition precedent to the maintenance of an independent action by a borrower would provide little, if any, protection to borrowers, and would clearly defeat the intent of the Legislature in the enactment of this statute. *See Almac's Inc. v. R. I. Grape Boycott Committee*, 110 R.I. 36, 290 A.2d 52 (1972).

## II. *Effect of Repayment of Loan*

The Defendants' second contention is that the penalty section of the statute does not provide the relief requested, because the loan has been paid and the statute does not provide for return of these funds by a lender.

The section of the statute in question, R.I.G.L. § 19–25.2–29, provides that: "Any secondary mortgage . . . in the making or collection or which any act shall have been done which constitutes a misdemeanor under this section, shall be void and the lender shall have no right to collect or receive any principal, interest or charges whatsoever. . . ." The Defendants' contention is neither supported by the language of the statute nor by decisions interpreting an analagous provision of the Rhode Island usury statute, R.I.G.L. § 6–26–1, et seq.

The question of the right of a borrower to recover principal and interest paid under a void contract has arisen in several cases dealing with the Rhode Island usury statute. R.I.G.L. § 6–26–1, et seq.

In *Moncrief v. Palmer*, 44 R.I. 37, 114 A. 181 (1921), the first in this line of cases, the

Rhode Island Supreme Court held that when a borrower seeks relief from a usurious contract, he must tender principal and legal interest to the lender. This decision rested upon the then equitable consideration that notwithstanding the fact that the loan is void as usurious under the statute, it would be "contrary to good conscience that a [borrower] should be free from liability and still be permitted to retain the money of the lender and be required to make no proper compensation for its use." *Supra* at 41, 114 A. 181.

In 1946, the Rhode Island Supreme Court again faced this issue in *St. Germain v. Lapp*, 72 R.I. 42, 48 A.2d 181 (1946). In that case, the court modified the *Moncrief* decision in that the borrower was required to return only the principal, and not the interest, to a lender upon a finding that the loan was usurious and void. The court reasoned that although a borrower was required to return the principal amount of the loan, the exaction of interest is "an entirely different field." *Supra* at 52, 48 A.2d 181. A lender who violates the usury statute, the court found, forfeits his right to any interest entirely and cannot be heard asserting that right before a court of equity.

The last case in this triology is *Nazarian v. Lincoln Fin. Corp.*, 77 R.I. 497, 78 A.2d 7 (1951). In *Nazarian*, the court found that a borrower who brought an action to recover payments made to a lender under a usurious agreement was entitled to recover both principal and interest. The Court partially distinguished this case from *Moncrief* and *St. Germain* (although finding that the policy announced in dicta in *St. Germain* supported its holding), reasoning that here the plaintiff was not seeking relief in equity, but was following

> the express provisions of the statute by bringing an action at law to recover payments of both principal and interest made under an agreement which is declared to be usurious and totally void.... [W]e think that the plaintiff in the prevailing circumstances is entitled to recover all such payments of principal and interest. In our judgment to hold otherwise would amount to a distortion of the plain lan-

guage of the statute and a denial of the relief expressly therein provided as the established state policy. *Supra* at 506, 78 A.2d 7.

The penalty provisions of both the Secondary Mortgage Loans Act and the usury statute are identical in that any contract or mortgage which is violative of either statute is void. The usury statute grants an express right to the borrower to recover all principal and interest paid to the lender under a usurious transaction. The language of the Secondary Mortgage Loans Act, in our view, dictates the same result. Under § 19–25.2–29, a lender who violates the statute loses its right to collect or receive any principal, interest or charges whatsoever. As the court said in *St. Germain*, regarding the policy of the state in enacting the usury statute,

> ... The legislature made the new policy one of positive benefit to the borrower by enabling him to recover any principal or interest which he may have paid to the lender on the invalid loan. By this provision it is clear beyond doubt that the legislative intent was to strip the violator not only of any increment accruing from the loan but also of the entire principal of the loan itself. *Supra* at 48, 48 A.2d 181.

Similarly, to deny this borrower the recovery of payments made under a void mortgage would frustrate the stated purpose of the Legislature by allowing a lender to be unjustly enriched by retaining moneys received under an illegal loan.

### III. *Effect of Delay in Bringing Suit*

■ We also reject the Defendants' contention that the Trustee's complaint is barred by laches because the suit was not brought until three years after the loan had been repaid. The Rhode Island Supreme Court held in *Berthiaume v. School Comm. of City of Woonsocket*, 397 A.2d 889 (R.I. 1979), "the equitable defense of laches comprehends not mere delay but delay which works a prejudicial disadvantage to another. The mere passage of time is insufficient to invoke the defense of laches; what is crucial are the changes brought about by the passage of time." *Supra* at 894 (citations omitted).

Because the issue of the prejudicial effect of the delay in bringing this complaint is a factual one to be determined at an evidentiary hearing, the defense of laches cannot support a motion to dismiss.

### IV. *Marquette's Status as Assignee*

The fourth ground of the motion to dismiss, which affects only the status of the defendant Marquette, is that Marquette, as a duly licensed credit union is exempt from the provisions of the Secondary Mortgage Loans Act.

Section 19–25.2–30(a) provides that the statute does not apply to "any person doing business under and as permitted by any law of this state relating to ... credit unions." There is no issue of fact or law raised regarding Marquette's status as a credit union. The question remains however, whether a credit union, which is the *assignee* of a loan made in violation of the Act, escapes liability because of its exempt status. The plaintiff alleges that Union, which is admittedly a licensee and subject to the provisions of the Secondary Mortgage Loans Act, violated the provisions of the statute in that it demanded, collected or received unauthorized charges. Assuming that these allegations are true, which we must in considering a motion to dismiss, *see Gardner v. Toilet Goods Assn., supra,* the loan would be void under § 19–25.2–29. Union would have no right to collect payments under that loan, and as discussed previously the borrower under that transaction could bring an action to recover principal, interest and other charges paid under that loan. In Marquette's view, once the loan was assigned to an exempt party, the borrower would lose his action to recover these sums.

Marquette's position is based on a misunderstanding of the effect of its status as assignee of a loan made by a licensee under the Act, and its independent status as a credit union.

The consequence of adopting Marquette's position would be to approve the ludicrous situation where a lender subject to the Act could make a loan in violation of its provisions, sell the note to an exempt assignee and escape liability, presumably because payments would be made to the assignee who is exempt from liability under the statute. If Marquette's argument were logically extended, it is conceivable that the borrower would have no right to recover moneys paid under the loan either from the assignee (because of its exempt status), or the lender, who technically has received no "principal, interest or charges whatsoever" from the borrower.

We interpret the statute to mean that although Marquette is exempt under the Act in the making of original loans on its own behalf, as an assignee it takes all the rights *and* liabilities of its assignor. *See Talcott, Inc. v. Corenzwit & Co.,* 76 N.J. 305, 387 A.2d 350 (1978); *Stevwing v. Western Penn. Nat. Bank,* 468 Pa. 24, 359 A.2d 793 (1976); *Willmann & Assoc. v. Penseiro,* 158 Me. 1, 176 A.2d 739 (1962). We cannot conceive that either the legislative intent or judicial interpretation of this issue could lead to the result suggested by Marquette, and we leave the pronouncement of the correctness of Marquette's position to some higher tribunal.

For the foregoing reasons, it is hereby ORDERED that the motion to dismiss the complaint is denied.